UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LARS ST. JOHN, | ) | CASE NO. 1:25-CV-1450 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| UNIVERSITY HOSPITALS CLEVELAND MEDICAL CENTER, *et al.*, | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | |

Before the Court is *pro se* Plaintiff Lars St. John's ("Plaintiff") Amended Application to Proceed *In Forma Pauperis*. (Docs. 13, 13-1.) Also before the Court is the Motion to Dismiss submitted by defendants University Hospitals Cleveland Medical Center ("University Hospitals"), University Medical Group, Dr. Adrienne Callahan, Dr. Kevin Cooper, and Robert Roseman (together "Defendants). (Doc. 7.) The Motion to Dismiss is fully briefed. (Docs. 10, 12.) For the reasons stated below, the Amended Application to Proceed *In Forma Pauperis* (Doc. 13-1) is GRANTED, and Defendants' Motion to Dismiss (Doc. 7) is GRANTED.

**I.      Application to Proceed *In Forma Pauperis***

Plaintiff filed this medical malpractice action against Defendants and sought to proceed *in forma pauperis*. (Doc. 2.) He did not make a sincere attempt to complete that Application fully and accurately. Instead, he wrote "0" or "N/A" in most of the blanks on the form. On September 12, 2025, the Court denied his Application and ordered him to pay the full filing fee of $405.00 within thirty days of the date of the Order. (Doc. 11.)

Plaintiff did not comply with the Order by paying the filing fee. Instead, he filed a Motion for Leave to Amend his *In Forma Pauperis* Application (Doc. 13) and attached his

proposed Amended Application (Doc. 13-1).  While the Amended Application supports his claim of poverty, it also proves Plaintiff did not make a sincere attempt to complete his original Application and provided information on his original Application which he knew to be false.  He signed his name on his original Application swearing "under penalty of perjury under United States law that [his] answers on this form and any attachments are true and correct."  (Doc. 2 at 53.)[1]  On his original form, he stated that he did not receive public assistance.  Plaintiff now states he receives HUD housing benefits which pays for most of his rent.  He receives a utility allowance, free transportation benefits, and Medicaid.  This does not appear to be a case where Plaintiff was attempting to hide income or assets from the Court, but rather one in which he simply did not consider it important to take the time to properly and truthfully complete the application.  The Court does not take lightly requests to waive payment of the filing fee and to proceed at taxpayer expense.  Proceeding *in forma pauperis* is a privilege, and not a right.  *Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).  It is within the Court's discretion to allow a litigant to proceed *in forma pauperis*.  *Id*.  The Court will allow this amendment and grant the Application.  However, Plaintiff is cautioned that if he fails to sincerely and properly complete an *in forma pauperis* application in the future, it will likely be denied, and his privilege to proceed *in forma pauperis* in this Court may be permanently enjoined.

**II.** **Motion to Dismiss**

    **A.** **Background**

        **1.** **Factual Allegations**

Though Plaintiff's Complaint is not entirely clear and is not in chronological order, it appears Plaintiff was dissatisfied with medical treatments he received from physicians in the

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

University Hospitals Dermatology Department. His Complaint begins in mid-2023. In April 2023, Plaintiff scheduled a consultation with plastic surgeon Dr. Nidal Al Deek. (Doc. 1 at 6.) He claims a few days before his scheduled appointment, a nurse called him and told him he would need to see Dr. Tufaro first and then schedule an appointment with Dr. Al Deek. (*Id.*) Plaintiff scheduled an appointment with Dr. Tufaro; however, his blood pressure at that appointment was extremely high. (*Id.*) Medical staff informed him that surgery would not be possible due to his elevated blood pressure. (*Id.* at 7.) Plaintiff contends Dr. Tufaro was reluctant to see him and appeared to be "going through the motions." (*Id.*) He claims that it was "clear these 'white' individuals prevented [him] from receiving medical care." (*Id.*)

Plaintiff alleges he then saw Dr. Callahan on May 1, 2023 at her Westlake, Ohio office. (*Id.* at 7.) He contends she told him that she only performed procedures on Mondays, and he would therefore have to schedule any procedures on a Monday. (*Id.*) He claims that she has appointments on other days, and he was only seen on Mondays because he is black. (*Id.*) At this appointment, Plaintiff showed Dr. Callahan a growth that Plaintiff believed to be a mole. (*Id.* at 3.) Dr. Callahan did not agree with his suspicion; however, she performed a biopsy to put his mind at ease. (*Id.*) On May 15, 2023, Dr. Callahan performed the biopsy which resulted in no adverse findings. (*Id.*)

On May 22, 2023, Plaintiff had the sutures removed. (*Id.*) At that time, he asked Dr. Callahan for a referral to Dr. Christina Wong for excision of hypopigmented skin. (*Id.*) Plaintiff claims Dr. Callahan offered to do the excision herself. (*Id.*) He alleges he asked Dr. Callahan if she was qualified to do surgery, and she told him there was only so much that she could do because she was not a surgeon. (*Id.*) He claims that Dr. Callahan performed seven procedures to remove hypopigmented skin between July 2023 and December 2023. (*Id.* at 4.) He alleges

numerous issues with the procedures which led to unnecessary pain and scarring. (*Id.* at 4, 9.) Plaintiff alleges Dr. Callahan was not trained or qualified for these procedures and "experimented" on him. (*Id.* at 5.)

Plaintiff had his last appointment with Dr. Callahan on February 5, 2024. (*Id.* at 9-10.) At that time, he requested referrals to Dr. Elizabeth Gordon Spratt for a "halo" laser consultation, and to Dr. Wong for a "second opinion." (*Id.* at 10.) His appointment with Dr. Spratt was scheduled for April 2, 2024. (*Id.*) On March 20, 2024, Roseman telephoned Plaintiff to tell him that his appointment with Dr. Spratt was cancelled. (*Id.*) Roseman stated that there was nothing more University Hospitals could do to address his hypopigmentation. (*Id.*)

Plaintiff contacted the Patient Advocate Office and spoke to a representative. (*Id.* at 11.) He accused University Hospitals' doctors and staff of discrimination. (*Id.*) The Patient Advocate responded on March 27, 2024, stating that a thorough review of his case had been conducted and demonstrated that "[he was] uncooperative during [his] visits, and at one time threatened to pull the sutures out [him]self. Medical record shows the procedure was conducted appropriately and [his] surgical site was healing well. [His] appointment with Dr. Spratt was cancelled because she does not have the appropriate laser equipment to treat [his] condition. [He was] given a number of an outside provider [he] could contact that treats this condition." (Doc. 1-11 at 42.) On that same day, Roseman sent a letter to Plaintiff informing him the University Hospitals Dermatology Department "will no longer be able to provide medical care for [him] due to [his] harmful and disruptive behavior." (Doc. 1-10 at 41.)

**2.     Procedural History**

On July 10, 2025, Plaintiff filed his Complaint against University Hospitals Cleveland Medical Center, University Medical Group, Dr. Adrienne Callahan, Dr. Kevin Cooper, and Robert Roseman.  (Doc. 1.)  Plaintiff's Complaint contains four counts.  Count One asserts claims for "bodily injury," "medical negligence," and "fraud."  (*Id.* at 2.)  Count Two asserts a claim of discrimination under 42 U.S.C. § 1981, Title VI, Title VII, Title IX, and the Affordable Care Act, 42 U.S.C. § 18116(a).  (*Id.* at 6.)  Count Three asserts a claim for breach of contract.  (*Id.* at 12.)  Finally, Count Four asserts a claim for "libel and slander."  (*Id.* at 13.)  He seeks monetary damages.

On August 14, 2025, Defendants moved to dismiss.  (Doc. 7.)  They assert Plaintiff failed to adequately plead facts to support his discrimination claims, and the Court should decline jurisdiction over his remaining state law claims.  (*Id.*)  In the event the Court does not decline jurisdiction over the state law claims, Defendants contend the Complaint should nonetheless be dismissed because the breach of contract, libel, and slander claims are barred by *res judicata*, his libel and slander claims are time barred, and he fails to state a claim for relief for breach of contract.  (*Id.*)

**B.     Legal Standard**

*Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by lawyers.  *El Bey v. Roop*, 530 F.3d 407, 413 (6th Cir. 2008).  However, the "lenient treatment generally accorded to *pro se* litigants has limits."  *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).  A complaint must still contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A Rule 12(b)(6) motion tests whether the complaint meets this standard.  To survive a Rule 12(b)(6) motion for failure to state a claim,

the complaint must make out a plausible legal claim, meaning the complaint's factual allegations must be sufficient for a court "to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Plausibility does not require any specific probability of success, but it does demand "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When courts evaluate whether a complaint makes out a plausible claim, they must accept all factual allegations as true. *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 534 (6th Cir. 2017) (quoting *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016)). Courts must also draw all reasonable inferences in favor of the plaintiff, and they must generally construe the complaint in the light most favorable to the plaintiff. *Id.* But courts do not accept legal conclusions or other conclusory allegations as true. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275-76 (6th Cir. 2010)). And courts need not make unwarranted factual inferences. *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).

**C.     Analysis**

Defendants argue the discrimination claims in Count Two of the Complaint must be dismissed for failure to state a claim under Rule 12(b)(6). (Doc. 7 at 74.) Because Count Two is the only claim supporting federal jurisdiction, Defendants argue the Court should decline to exercise supplemental jurisdiction over the remaining state law claims. (*Id.* at 76.)

Turning first to Count Two, Plaintiff alleges Defendants discriminated against him in violation of five federal laws: Title VII of the Civil Rights Act of 1964 ("CRA") (42 U.S.C. §

2000e), Title IX of the CRA, Title VI of the CRA, the Affordable Care Act (42 U.S.C. § 18116(a)), and 42 U.S.C. § 1981. (Doc. 1 at 1, 6-13.)

Plaintiff's first claim for discrimination allegedly arises under Title VII of the CRA. (*Id.* at 1, 6-12.) Defendants moved to dismiss this claim because Title VII prohibits discrimination only in the context of employment. (Doc. 7-1 at 75.) In his opposition, Plaintiff does not address his Title VII claim nor Defendants' arguments regarding its application to his Complaint. (*See generally* Doc. 10.) Plaintiff's failure to respond to Defendants' argument on his Title VII claim is sufficient alone to dismiss the claim. *Humphrey v. U.S. Attorney Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (failure to oppose arguments raised in a motion to dismiss is sufficient grounds for the district court to find that opposition is waived); *Scott v. Tennessee*, 878 F.2d 382 (6th Cir. 1989) ("[I]f a plaintiff fails to respond or otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion."). Notwithstanding Plaintiff's failure to oppose, Title VII of the CRA makes only employment discrimination actionable. *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 305, 145 S.Ct. 1540, 2221 L.Ed.2d 929 (2025) ("Title VII prohibits *employers* from discriminating against *employees* on the basis of race, color, religion, sex, or national origin") (emphasis added). None of Plaintiff's allegations relate to employment discrimination. Therefore, Plaintiff fails to state a claim under Title VII.

Plaintiff's second claim of discrimination allegedly arises under Title IX of the CRA. (Doc. 1 at 1, 6-12.) Defendants moved to dismiss because Plaintiff does not allege any discrimination on the basis of his sex. (Doc. 7-1 at 75.) Plaintiff argues he has stated a Title IX claim because his Complaint alleges discrimination against him as a "Black male." (Doc. 10 at 91.) Title IX states "[n]o person . . . shall, on the basis of sex, be excluded from participation in,

be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." *Doe v. Univ. of Ky.*, 111 F.4th 705, 715 (6th Cir. 2024) (citing 20 U.S.C. § 1681(a)). None of Plaintiff's allegations relate to discrimination based on his gender. That is, he does not claim any differential treatment because he is male. Instead, his claims of discrimination relate to alleged discrimination based on his race. Therefore, Title IX is inapplicable, and he fails to state a claim.

Plaintiff's third claim of discrimination allegedly arises under Title VI of the CRA. (Doc. 1 at 1.) Defendants' motion argues while Plaintiff's Complaint contains allegations relating to his course of treatment and related complaints, he does not allege any facts that demonstrate he was subjected to racially motivated discrimination. (Doc. 7-1 at 74.) Any allegations contained in the Complaint, Defendants argue, are legal conclusions insufficient to withstand a motion to dismiss. (*Id.*) Further, the individual defendants—Dr. Callahan, Dr. Cooper, and Roseman— moved to dismiss because only entities receiving federal financial assistance can be sued under Title VI. (*Id.* at 75.) In opposition, Plaintiff does not address Defendants' primary argument that his Complaint lacks allegations of racially motivated discrimination. (*See generally* Doc. 10.) Plaintiff focuses on Dr. Callahan's statements regarding only seeing Plaintiff on Monday's, allegedly because he is black. (*Id.* at 90.) Plaintiff does oppose dismissal of the individual defendants, arguing individuals can be sued until Title VI. (*Id.* at 91.)

As an initial matter, individuals cannot be sued under Title VI. *Buchanan v. Bolivar*, 99 F.3d 1352, 1356 (6th Cir. 1996) (affirming dismissal of Title VI claim against individuals); *see also Brooks v. Skinner*, 139 F.Supp.3d. 869, 881 (S.D. Ohio 2015) ("In a Title VI case, the proper defendant is an entity rather than an individual.") (citation and quotation omitted).

Therefore, the claims of discrimination arising under Title VI against Dr. Callahan, Dr. Cooper, and Roseman, must be dismissed.

As to Plaintiff's Title VI claim against University Hospitals, that too must be dismissed. Title VI states "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." *Foster v. Michigan*, 573 F. App'x 377, 387 (6th Cir. 2014) (quoting 42 U.S.C. § 2000d).  "Title VI targets intentional discrimination only." *Id.* at 388 (citing *Alexander v. Sandoval*, 532 U.S. 275, 280, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001)).  At this stage, Plaintiff is not required to plead his discrimination claim with heightened specificity. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513-14, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).  Nevertheless, "conclusory allegations of race discrimination are insufficient." *Foster*, 573 F. App'x at 388.  As the Sixth Circuit has repeatedly explained, "a complaint that includes conclusory allegations of discriminatory intent without additional supporting details does not sufficiently show that the pleader is entitled to relief." *Id.* (quoting *Nali v. Ekman*, 355 F. App'x 909, 913 (6th Cir. 2009)).

Plaintiff's discrimination claims never rises above the speculative level.  He alleges facts that suggest he was unhappy with his medical care, and concludes that the actions of his physicians, medical staff, and administrative staff were the result of racial discrimination.  There are, however, no facts that reasonably suggest any of the Defendants intentionally discriminated against him on the basis of his race.  In fact, his Complaint pleads he was denied treatment because his blood pressure was too high, because the physicians did not have other treatments to address his concerns, because the physician did not have the proper equipment to perform the procedure he wanted to have, and because his behavior toward hospital physicians and staff was

considered to be harmful and disruptive. (Doc. 1 at 6-12.) Plaintiff's allegations that he is black, and all Defendants are white (or "non-black"), is not enough. *Nali*, 355 F. App'x at 913. He must instead plead facts that show University Hospitals intentionally discriminated against him because he is black. He has not done so. Accordingly, because Plaintiff's Title VI claim does not plead intentional racial discrimination, the claim must be dismissed.

Plaintiff's fourth claim of discrimination alleges a violation of Section 1557 of the Affordable Care Act. (Doc. 1 at 1, 6-12.) Section 1557 of the Affordable Care Act ("ACA") provides that "an individual shall not, on the grounds prohibited under Title VI of the Civil Rights Act of 1964 [(race)], Title IX of the Education Amendments of 1972 [(gender)], the Age Discrimination Act of 1975 [(age)], or section 504 of the Rehabilitation Act of 1973 [(disability)], be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116(a). To state a claim for discrimination under any of those four statutes, Plaintiff must allege facts to support the legal standards that define discrimination under that statute. *Doe v. BlueCross BlueShield of Tenn., Inc.*, 926 F.3d 235, 239 (6th Cir. 2019). As explained above, Plaintiff's claims under Title VI and Title IX of the CRA must be dismissed. Therefore, Plaintiff's claim under Section 1557 of the ACA also fails.

Lastly, Plaintiff asserts a discrimination claim under 42 U.S.C. § 1981. (Doc. 1 at 1, 6-12.) Section 1981 "prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors." *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006). A "plaintiff must plead and prove that (1) he belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) the defendant intended to discriminate against him on the basis of race; and (3) the defendant's discriminatory conduct

abridged a right enumerated in section 1981(a)." *Id.* For the same reasons discussed above, Plaintiff alleges no set of facts from which a reasonable person could infer his race factored into any of the medical decisions made by his physicians or any of the treatments he received. And Plaintiff fails to plead any facts which demonstrate a right enumerated in § 1981 was implicated by the Defendants' alleged conduct. Accordingly, the Complaint fails to allege sufficient facts to state a plausible claim under § 1981.

Plaintiff's remaining claims arise under state law. The Court has supplement jurisdiction over the claims pursuant to 28 U.S.C. § 1367. Supplemental jurisdiction exists whenever state law and federal law claims derive from the same nucleus of operative facts and when considerations of judicial economy dictate having a single trial. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). However, "A district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996). In cases where the federal law claims are dismissed before trial, the state law claims should also be dismissed. *Gibbs*, 383 U.S. at 724 ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). Having dismissed Plaintiff's federal law claims at the motion to dismiss stage, the Court declines jurisdiction to hear Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3). Because the Court declines jurisdiction over these claims, the Court does not reach Defendants' alternative arguments for dismissal of the state law claims.

**III.    Conclusion**

Plaintiff Lars St. John's Amended Application to Proceed *In Forma Pauperis* (Docs. 13, 13-1) is GRANTED. Defendants' Motion to Dismiss (Doc. 7) is GRANTED. This action is

DISMISSED.  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED.**

Date:  October 21, 2025

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE